Thomas Brown and Lillian R. Brown, His Wife, Michael Kwortnik and Marlene Kwortnik, His Wife, Luther Miller and Vivian Miller, His Wife, A. E. Fricker, Jr. and Lorraine J. Fricker, His Wife, Henry E. Ziegler and His Wife, William Huttlin and Lynne Huttlin, His Wife, Appellants, v. Zoning Hearing Board of Upper Dublin Township, Appellee, and Rita Smith, Intervening Appellee.

Argued October 5, 1973, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Catherine Gallagher Barone,* for appellants.

*Raymond Jenkins,* for appellee.

*J. Peirce Anderson,* for intervenor.

OPINION BY JUDGE CRUMLISH, JR., January 23, 1974:

The Zoning Hearing Board of Upper Dublin Township granted the application of Mrs. Rita Smith which sought to change the existing nonconforming use on certain land[1] situated in Jarrettown, Montgomery County, to enable the premises to be operated as a restaurant with takeout food provisions (another nonconforming use). The Common Pleas Court of Montgomery County affirmed the Board.

Thomas Brown and wife (Appellants) who are owners and residents of adjoining, adjacent or contiguous premises, appeal to us. Their position is without merit.

Rita F. Smith (Applicant) has operated a business known as "The Barn" in Jarrettown for approximately seven years. "The Barn" is an eating establishment which serves pizzas, sandwiches and various snacks, with both eat-in and take-out facilities.

Applicant acquired the property, a Class "A" Residential District use, for the purpose of relocating her restaurant.

---

[1] The land is described as "on the westerly side of Limekiln Pike approximately 227 feet north of Mundock Road, Jarrettown, Montgomery County."

Presently situate on the premises is a two-story house long used as a combination dwelling, and other later described uses, along with a stable and two other outbuildings.

The prior owners, Mr. and Mrs. George Curtis, bought the property in 1942 (prior to the adoption of any zoning laws) and through the years used the premises for a varied number of enterprises, all of which were nonconforming uses under the subsequent Upper Dublin Township Zoning Ordinance. The Curtis' had used the property as what has been described as a "general store," selling livestock, clothing, hardware, and canned goods over the counter. In 1956, the store became the Jarrettown Post Office, serving some seventy (70) families in the area.

Mr. and Mrs. Curtis also sold kerosene from a pump on the back porch, and dispensed gasoline from two pumps located in the circular driveway in front of the two story dwelling. Hanging over the pumps was a three feet by five feet sign inscribed "Mobil."

Article XV, Section 1503 of the Upper Dublin Township Zoning Ordinance of 1956, Ordinance 140, as amended, provided: "Such use (nonconforming) shall not be changed to a use designated for a district having less restrictive regulations."

Article 1506 of the same Ordinance is also particularly relevant and it provides: "The Board of Adjustment shall have the discretion to determine what . . . change of nonconforming use is of the same class of use and permissible."

The issue before the Board and later the lower court, was whether Applicant's proposed nonconforming use (restaurant) was of the same class or one more restrictive than the prior nonconforming use. The Board, after taking testimony, determined that the existing nonconforming use was within the "CR-Commercial Retail" class of the Upper Dublin Zoning Ordinance, which would include the proposed restaurant use, and therefore, by the authority of Articles 1503 and 1506, Applicant was entitled to use the premises for that pur-

pose. The lower court, without taking additional testimony, agreed with this determination.

In a zoning case where the court below took no additional testimony, review by the Commonwealth Court of Pennsylvania is limited to a determination of whether the zoning board abused its discretion or committed an error of law. *Clawson v. Harborcreek Zoning Hearing Board*, 9 Pa. Commonwealth Ct. 124, 304 A. 2d 184 (1973) ; *The Boulevard Land Corporation v. Zoning Board of Adjustment*, 8 Pa. Commonwealth Ct. 584, 303 A. 2d 234 (1973).

Appellants urgently argue that the Board committed a manifest abuse of discretion in determining that the existing nonconforming use on the land prior to Applicant's acquisition was in the same class of uses as those now designated in the Upper Dublin Township Zoning Ordinance as "CR-Commercial Retail" district. Essentially, Appellants contend that the gasoline and kerosene sales made by the prior owners were not the primary, but an accessory use of the land, and that the Board's failure to differentiate between these uses led to the erroneous classification of the existing nonconforming use, and the Board's final decision that the Applicant was entitled to transform the existing nonconforming use into a restaurant.

Initially we will dispose of Appellant's contention that the Board erred in first failing to differentiate between the prior primary and accessory nonconforming use of the premises before determining the comparable class of uses established by the present Ordinance.

Appellants, citing *Stokes v. Zoning Board of Adjustment*, 402 Pa. 508, 167 A. 2d 316 (1961), contend that: "A nonconforming accessory use cannot become the basis for the establishment of a nonconforming principal use." With this proposition we agree, but unfortunately for them it has no application here.

In *Stokes, supra* and the other cases cited by the Appellants, the issue before the Zoning Board was whether a nonconforming use had been established prior to the enactment of the relevant zoning ordinance. Our Pennsylvania Supreme Court held that a *casual use of a property,* inconsistent with the terms of a zoning ordinance and prior to the effective date thereof, cannot transform the premises to nonconforming use status. But, this is not the present factual situation. The nonconforming use status of the land here has been established and the only question is into what part of the later enacted zoning ordinance do the existing nonconforming uses properly repose.

The Board concluded that the existing nonconforming use of the property fell into the CR-Commercial-Retail district, which provides for two distinct classes. Section 1201 provides in Class L:

"Section 1201. In Class L, a building may be erected, altered or used and a lot or premises may be used for any of the following purposes and no other:

"1. *Retail sale of dry goods, variety and general merchandise, clothing, food,* flowers, beverages, drugs, household supplies or furnishings, sale or repair of jewelry, watches, clocks, optical goods, musical, professional or scientific instruments.

"2. . . . .

3. Restaurant, tea room, cafe, taproom, confectionery or similar establishment serving food or beverage." (Emphasis supplied.)

Section 1202. Class I permits

"1. Any use permitted in Class L.

"2-5. . . . .

"6. *Gasoline filling stations,* storage or public garage, automobile repair shop, but excluding body and fender repair." (Emphasis supplied.)

After a reading of the above-quoted section of the Zoning Ordinance, we hold the Board did not abuse its

discretion in determining that the myriad of nonconforming uses existing on the property prior to its acquisition by Applicant were best described by the "CR Commercial-Retail District" and that Applicant was entitled to her proposed restaurant use because it was of the same class as the existing nonconforming use.

### ORDER

AND Now, this 23rd day of January, 1974, the Order of the Court of Common Pleas of Montgomery County dated September 28, 1972, is hereby affirmed.